In the Matter of the Petition of FRED A. CARP and WILLIAM S. OSTRANDER for a Writ of Certiorari to Review the Proceedings of the Board of Supervisors of Saratoga County with Reference to the Appointment of a Commissioner of Elections.

Fourth Department, July 3, 1917.

Certiorari — when writ will not lie — act of board of supervisors in appointing commissioner of elections designated by county chairman not judicial — determination of right to hold public office — action in nature of quo warranto exclusive remedy — refusal of Attorney-General to bring action not assumed.

Where two parties, each claiming to be chairman of a Republican county committee, certify a candidate for appointment as commissioner of elections, pursuant to section 194 of the Election Law, the board of supervisors in passing upon both designations, which are regular in form,

and·in appointing one of said candidates, acts in a purely administrative and not judicial capacity, and, hence, certiorari to which the person holding the office has not been made a party is not a proper remedy to review the appointment.

If the appointee is to be ousted from office, it must be through a direct action to which he is a party.

The title to a public office should not be questioned collaterally and can only be determined in an action in the nature of quo warranto, which remedy is exclusive.

It cannot be assumed that the Attorney-General will refuse to bring an action of quo warranto thereby leaving the petitioners without a remedy.

A writ of certiorari will only lie for the review of determinations of judicial tribunals and of other tribunals when engaged in the exercise of powers of a judicial nature.

KRUSE, P. J., and DE ANGELIS, J., dissented, with memorandum.

APPLICATION for a writ of certiorari made to the Appellate Division in the first instance.

This case was transferred from the Third Department to the Fourth Department. (See 178 App. Div. 946.)

*Harvey D. Hinman,* for the petitioners.

*J. W. Atkinson [Lewis E. Carr* of counsel], for board of supervisors, Saratoga county.

MERRELL, J.:

This proceeding is instituted to review the proceedings of the board of supervisors of Saratoga county in appointing the Republican member of the board of election commissioners of that county. As legally constituted, the said board of elections is bi-partisan, and consists of two members, one a Democrat and the other a Republican.

It appears that for some time past there has been a division in the Republican county committee of the county of Saratoga, William S. Ostrander and George H. Whitney each claiming to be chairman of said committee. At a meeting of the committee held on October 31, 1916, Ostrander presiding, a resolution was adopted requesting said chairman, pursuant to section 194 of the Election Law (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd. by Laws of 1913, chap. 820), to certify that in the opinion of such committee the petitioner

Fred A. Carp was a fit and proper person to be appointed a commissioner of elections. On the same day, Ostrander, as such chairman, made, acknowledged and filed with the board of supervisors a certificate, regular in form, to the effect that in his opinion said Fred A. Carp was a fit and proper person to be appointed such election commissioner and recommending him for such office. On the 24th of November, 1916, George H. Whitney, representing himself to be chairman of the Republican county committee of Saratoga county, also made and filed with the board of supervisors a similar certificate recommending one Robert Shaw for such appointment as the Republican member of said election commission. The certificate designating Shaw is regular in form, and conforms to the requirements of the Election Law. On November 29, 1916, the said Robert Shaw was appointed election commissioner by the board of supervisors. Prior to the designation of Shaw by the board, the name of Fred A. Carp had been presented, as above stated, so that both names were considered, both certificates being before the board of supervisors at the time Shaw was designated. The petitioners herein are the said Fred A. Carp and William S. Ostrander, and the petition asks for a review of the proceedings of the board of supervisors of Saratoga county in reference to the appointment of such election commissioner, the petitioners claiming that the said William S. Ostrander was at the time the duly elected and chosen chairman of the Republican county committee, and for that reason that the certificate naming Shaw, the present holder of the office, was void. The respondents contend that certiorari is not the proper remedy. Beyond question, the office of commissioner of elections is a public office, and Robert Shaw is the present incumbent of that office. No question is raised but that Shaw is a Republican and possesses the proper qualifications for the office of election commissioner. Upon its face his appointment appears to have been entirely regular. Shaw is not a party to this proceeding, and, therefore, cannot be heard in the determination of the question upon which depends his right to hold the office in question. It has long been the law that the title to a public office should not be questioned collaterally (*People ex rel. Dolan* v. *Lane*, 55 N. Y. 217), and that the right to hold such office can only

be determined by an action in the nature of quo warranto. Before the amendment of the Code, the right to hold public office was tested by means of a writ of quo warranto, which proceeding applied in all cases where a person occupied a public office under color of right. Since the amendment of the Code, section 1948, the remedy is by an action in the nature of quo warranto. That such remedy is exclusive has been held in numerous cases, among which are the following: *People* v. *Stevens* (5 Hill, 628); *Morris* v. *People* (3 Den. 396); *People ex rel. Corwin* v. *Walter* (68 N. Y. 403); *Matter of Gardner* (Id. 467, 469, 472); *People ex rel. Trustees* v. *Board of Supervisors* (131 id. 468); *Matter of Kane* v. *Gaynor* (144 App. Div. 196; affd., 202 N. Y. 615).

Not only has it been consistently held that the only way title to a public office can be tested is as above stated, but, in addition, subdivision 2 of section 2122 of the Code of Civil Procedure expressly forbids the issuance of such a writ " where the determination can be adequately reviewed, by an appeal to a court, or to some other body or officer."

It has been suggested by the petitioners that as the Attorney-General might refuse to bring the action set forth in section 1948 of the Code, the petitioners are without a remedy unless certiorari will lie. We cannot assume that the Attorney-General would refuse to do his duty. Where it appears that a party is actually aggrieved and that another is holding office without right, the Attorney-General would scarcely refuse to bring an action in the name of the People to oust the usurper from office. The law was framed for the purpose of protecting a public official from the attacks of disappointed competitors and persons not actually aggrieved, and only those who have actual grievances and can show that the office is illegally held are entitled to seek redress. (Code Civ. Proc. § 2127.)

In the case at bar the name of Fred A. Carp, one of the petitioners, was before the board of supervisors, and the board, acting in an administrative capacity, determined that the certificate recommending Shaw was regular, and appointed Shaw to the office. It is quite apparent that, while Carp may be disappointed, he probably never would have received the appointment, and certainly would not now receive it,

since the board of supervisors is actively defending the right of Shaw to hold the office in question.

Carp has no claim upon the office. At most he could only insist that the certificate of Ostrander recommending him be considered, and this was apparently done. He was not appointed. The certificate recommending Shaw was just as regular upon its face, and the latter was designated. All the legal forms seem to have been observed, and if the appointee is to be ousted from office it must be through a direct action to which he is a party. It is not at all certain but that the certificate of Whitney, filed nearly a month later than the Ostrander certificate, at the time of its filing correctly voiced the sentiment of a majority of the Republican county committee. Whitney certified at the time of making the certificate which the board of supervisors honored that he was chairman of the Republican county committee. If his official standing is to be determined, it should be in appropriate proceedings to which he is a party.

A writ of certiorari will only lie for the review of determinations of judicial tribunals and of other tribunals when engaged in the exercise of powers of a judicial nature. The position of the relators is that because of the two certificates made by the rival chairmen and filed with the board of supervisors, that body was called upon, in determining which certificate was regular, to perform a judicial duty, and that when it recognized the Whitney certificate the board acted judicially, and that, therefore, its action may be reviewed by certiorari. I cannot agree that such action was judicial. The statute contemplates only the performance of an administrative or executive function. When the board of supervisors of Saratoga county designated Shaw, they were acting as administrators of the Election Law, in which law the Legislature laid down a comprehensive scheme for the carrying on of elections throughout the State. The function of the board of supervisors in the respective counties is to appoint election commissioners upon the recommendation of the committees of the various political parties certified to by the respective chairmen. (See Election Law, §§ 191, 194, as amd. by Laws of 1913, chap. 820.) While such boards have a right to exercise discretion and judgment and to refuse to appoint unfit persons whose

names may be recommended, they still act in an administrative capacity, and their acts in such a case are clearly not of a judicial nature. The fact that such boards can only appoint upon recommendation clearly shows that their acts are not judicial. A writ of certiorari will not lie for the added reason that the board of supervisors of Saratoga county acted in a purely administrative capacity. (*People ex rel. Second Avenue R. R. Co.* v. *Board of Commissioners, etc., of New York,* 97 N. Y. 37; *People ex rel. Corwin* v. *Walter,* 68 id. 403; *People ex rel. O'Connor* v. *Supervisors,* 153 id. 370.)

As the title to a public office is involved and as the person holding the same is not a party to the proceeding, it is clear that the title to the office and the right of the present incumbent to hold the same should be tried out in a proper action to which Shaw is a party. In such action all of the facts could be brought before the court, and the evidence would not be confined to the bare return of the board of supervisors.

For the reasons above stated, I am of the opinion that the writ of certiorari should be dismissed, and having so concluded, it does not appear necessary to determine the merits of the application as shown by the return filed.

The writ of certiorari heretofore granted by the court should be dismissed.

All concurred, except KRUSE, P. J., and DE ANGELIS, J., who dissented in a memorandum by KRUSE, P. J.

KRUSE, P. J. (dissenting):

There was a vacancy in the office of election commissioner in Saratoga county. A Republican was entitled to be appointed. The relator is a Republican and qualified for the office. He had the necessary certificate made by the chairman of the Republican county committee in due form, and acknowledged, certifying his fitness and recommending his appointment. If the history of this controversy ended here, clearly there could be no reasonable objection to requiring the board of supervisors to pass upon his application, and unquestionably, upon its refusal, the board could be compelled to do so. But the board of supervisors have assumed to fill the vacancy, and it is said that action stands in the way.

That, of course, is so if the action is effective. But it is claimed to be illegal and of no effect, and the relator seeks, by this proceeding, to review the action and have it so declared.

At the time the appointment to fill such vacancy was made there were two applicants for such appointment, the relator and the applicant who was appointed. The appointee's application was accompanied by a certificate recommending his appointment, made by one who claimed to be chairman of the Republican county committee. But the record does not show that he was such in fact, and the board of supervisors does not now, by its return, challenge the allegation of the petition and writ that the person who made the certificate for the appointee was not such chairman, but insists that certiorari will not lie to review its action.

The board had no right to appoint some one who furnished a certificate merely sufficient in form to comply with the Election Law, but in fact made by one having no authority to act for the committee, and who in fact was not its chairman. (Election Law [Consol. Laws, chap. 17; Laws of 1909, chap. 22], §§ 191, 194, 195, 196, as amd. by Laws of 1911, chap. 649, and Laws of 1913, chap. 820; *Matter of Kane* v. *Gaynor*, 202 N. Y. 615.) I think that where there are several certificates filed, made by different persons, each claiming to be chairman of a political party, the board of supervisors have the right, and it is their duty, in the first instance, to determine who is the rightful chairman, and if the board decides erroneously it may be corrected by the courts. And the action of the board in such a case is in the nature of a judicial function, and not merely ministerial or administrative.

Of course the appointee's title to the office cannot be effectually determined against him in this proceeding, because he is not a party thereto. He could have come in (Code Civ. Proc. § 2137), but he has refrained from doing so. And the relator has no standing to have instituted on his behalf an action by the Attorney-General in the nature of quo warranto, because he has not been appointed to the office. If the board of supervisors should see fit to appoint him, either voluntarily or in obedience to the direction of this court, upon a consideration of his application, then he would have standing to have such an action brought.

It is possible that the action of the board is so without a semblance of authority as to be an absolute nullity and not require the aid of a writ of certiorari, but that mandamus is the proper remedy. It is not easy always to determine which of these two writs should be invoked to accomplish a right result where public officials have gone wrong.

The cases are too numerous to mention where one writ has been used to review a proceeding, and it has been held that the other was the appropriate remedy. Such a case was *People ex rel. Schau* v. *McWilliams* (185 N. Y. 92). But the judges of the Court of Appeals have not always been in entire accord upon the question. (*People ex rel. Union & Advertiser Co.* v. *Stallknecht,* 119 App. Div. 917; 189 N. Y. 521; *People ex rel. Utica Sunday Tribune Co.* v. *Williams,* 140 App. Div. 58; 200 N. Y. 525.) Both were certiorari cases, and in each precisely the same question was under review. In the first case the merits of the controversy were passed upon by the Court of Appeals, and in the second, the writ was quashed upon the ground that certiorari was not the proper remedy.

The Legislature, however, has undertaken to remove this difficulty by providing against the failure of a proceeding simply because the remedy should be by mandamus instead of certiorari, or the reverse. In such a case the court may grant either writ. (Code Civ. Proc. § 2148a.) So that even if the relator's remedy is by mandamus, instead of certiorari, the proceeding should not be dismissed.

I think the motion to quash the writ should be denied, and that the proceeding of the board should be annulled, and an order made directing the board of supervisors to consider and pass upon the application of the relator.

DE ANGELIS, J., concurred.

Writ dismissed, with fifty dollars costs and disbursements.